# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JAMES R. BLANKENSHIP,**
**Claimant Below, Petitioner**

**FILED**

February 13, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0014** (BOR Appeal No. 2052984)
                    (Claim No. 950012268)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**NEWTOWN ENERGY, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner James R. Blankenship, pro se, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). The West Virginia Office of Insurance Commissioner, by Counsel Sean Harter, filed a timely response.

The issue on appeal is the denial of a request for medications. On January 4, 2017, the claims administrator denied a request from Mr. Blankenship's treating physician for the medications Ultram and Hydrocodone. The Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's Order and authorized the medications in an Order dated May 11, 2018. This appeal arises from the Board of Review's Final Order dated October 31, 2018, in which the Board of Review reversed the Office of Judges and reinstated the January 4, 2017, Order issued by the claims administrator, which denied the request for the medications Ultram and Hydrocodone.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Blankenship was involved in a slip and fall injury on August 30, 1994. On September 16, 1994, he signed a Report of Occupational Injury in which he stated that he had pain and spasms in the middle part of his back as the result of his slip and fall injury. Although he received conservative treatment, his pain complaints continued, and he never returned to gainful employment.

Mr. Blankenship came under the care of Samuel J. King, M.D. On October 25, 1999, Dr. King diagnosed chronic mechanical pain syndrome, which included a chronic lumbosacral strain, degenerative disc disease, pelvic instability, and muscle spasm, as well as reactive depression. Mr. Blankenship continued to use unspecified medications, heat and pillows, and exercise at home. On February 4, 2002, Dr. King noted that Mr. Blankenship had ongoing mechanical back pain, stiffness, spasms, and radiculopathy, and he was prescribed Ultram 50 mg and Lortab 7.5 mg. Dr. King diagnosed chronic mechanical back pain syndrome from an occupational injury, including lumbar spondylosis, lumbar myelopathy, and displacement of lumbar region with myelopathy. On March 15, 2002, Mr. Blankenship requested that he be granted an award of permanent total disability benefits. After considerable litigation, he was granted a permanent total disability award by the Office of Judges on May 12, 2005.

Mr. Blankenship continued to be treated for injuries resulting from his compensable injury in 1994. Bobby Miller, M.D., a Board-certified psychiatrist, evaluated Mr. Blankenship on August 18, 2015, and authored a report dated September 7, 2015. As part of Dr. Miller's evaluation, Richard Reeser, a psychologist, administered psychological testing. Dr. Miller and Mr. Reeser reported that Mr. Blankenship's Structured Inventory of Malingered Symptomatology test results were significantly elevated above the recommended cutoff score for the identification of suspected malingering and that he endorsed a high frequency of symptoms that were highly atypical in patients with genuine psychiatric or cognitive disorders. Similarly, Dr. Miller and Mr. Reeser reported that the results of the Test of Memory Malingering administered to Mr. Blankenship revealed that it was highly likely that he had intentionally selected incorrect pictures when he knew that some of the pictures were correct, which strongly suggested that he had attempted to portray himself in an unfavorable light on tests measuring his ability to learn and retain information. Dr. Miller and Mr. Reeser also reported that the Pain Patient Profile administered to Mr. Blankenship suggested above average levels of depression, anxiety, and somatization. During the evaluation, Mr. Blankenship informed Dr. Miller that his opioid medications were not effective, and did not improve his function. Dr. Miller diagnosed dysthymic disorder, undifferentiated somatoform disorder, and personality disorder, not otherwise specified. He added that other psychiatric disorders might have been present, but symptom adoption and exaggeration hampered the diagnostic process. Dr. Miller opined the current treatment plan and medication management were not appropriate and related to a compensable diagnosis. Dr. Miller added that it was likely that Mr. Blankenship was physically dependent on opioids, and he may require detoxification by reducing his dose by 25% per month until discontinuation.

By letter dated March 1, 2016, the claims administrator informed Dr. King that it was authorizing seven medications for the period of February 29, 2016, through May 29, 2016, but requested Dr. King to wean and taper these medications. The medications listed by the claims

administrator were: Norco 7.5 mg, Ultram 50 mg, Baclofen 10 mg, Symbyax 6/25 mg, Lyrica 50 mg, Gabitril 12 mg, and Xanax 1 mg. Mr. Blankenship protested the claims administrator's decision.

In office notes dated December 21, 2016, Dr. King noted that Mr. Blankenship continued to complain of chronic mechanical symptoms and lumbar radiculopathy and was taking Ultram and Hydrocodone for pain and Baclofen for muscle spasms. Dr. King added that he would require medications on a "lifetime basis due to the permanency of his injury." His diagnoses included lumbar spondylolysis, lumbar myelopathy, and displacement of the lumbar region with myelopathy.

The claims administrator denied Dr. King's request for authorization of Ultram 50 mg and Hydrocodone 7.5 mg on January 4, 2017. The claims administrator stated that the request was denied because a wean and taper plan for the medications was requested from Dr. King. In response to the claims administrator's Order, Dr. King submitted a letter dated April 20, 2017, and described Mr. Blankenship's occupational injury as soft tissue in nature, which had allegedly resulted in chronic inflammation, pain, and lumbar radiculopathy. Dr. King added that there was a limited number of medications available for treatment of his condition and nothing that would cure or make the symptoms go away. Dr. King was of the opinion that Mr. Blankenship would require medications on a lifetime basis.

Mary C. Murphy, D.O., evaluated Mr. Blankenship at the request of the Office of the Insurance Commissioner on July 5, 2017, and produced an independent medical report on the same date. Dr. Murphy reviewed and discussed the various medical records. She found that Mr. Blankenship was status post an L5-S1 hemilaminectomy and discectomy performed in 1987, and had degenerative disc disease of the lumbar spine confirmed by both MRI and x-ray studies. Dr. Murphy was of the opinion that the surgery in 1987 was unrelated to the compensable injury, as was the degenerative disc disease in the lumbar spine. Dr. Murphy also stated that he was status post lumbosacral strain that occurred on August 30, 1994, but she was unable to correlate the slip and fall injury sustained in 1994 with Mr. Blankenship's current symptoms. Moreover, Dr. Murphy found no objective evidence of radiculopathy, as the evaluation revealed good lower extremity muscle tone, without asymmetry or wasting; full strength in all major muscle groups in the legs; and other normal findings. Mr. Blankenship informed Dr. Murphy that he was taking eight prescription medications. Dr. Murphy opined that Ultram and Hydrocodone are not reasonable and necessary to treat the August 30, 1994, compensable injury. It was noted that Mr. Blankenship does not report reasonable relief from the medications.

By Decision dated May 11, 2018, the Office of Judges reversed the claims administrator's Order of January 4, 2017, which denied Dr. King's request for authorization for the medications Ultram and Hydrocodone, and authorized the medications. The Office of Judges gave greater weight to the opinion of Dr. King, who has been treating Mr. Blankenship for several decades. Dr. King reported that Mr. Blankenship's occupational injury is an anatomical injury to soft tissues resulting in chronic inflammation, pain, and lumbar radiculopathy. Dr. King stated that there are only a limited number of medications available for treatment of Mr. Blankenship's condition and there is no cure for his symptoms. Even though the requested medications are beyond the time

frame set forth by in West Virginia Code of State Rules § 85-20-60.1, the Office of Judges concluded that Dr. King is in the best position to assess the necessary treatment for Mr. Blankenship.

The Board of Review found the analysis and conclusions of the Office of Judges to be clearly wrong view of the reliable, probative and substantial evidence on the whole record. The Board of Review cited West Virginia Code of State Rules §§ 85-20 53 and 54 through 62 (Special Rules on Drugs and Medications), which require certain documentation when controlled substances are prescribed outside the time periods following the initial injury or subsequent surgery. The Board of Review concluded that the reports submitted from Dr. King, and the other evidence in the record, do not provide the documentation necessary for the authorization of the medications Ultram and Hydrocodone. It was concluded that the preponderance of the evidence establishes that the requested medications are not medically necessary and reasonably required in the course of treatment for the compensable injury of August 30, 1994.

After review, we agree with the decision of the Board of Review. The Board of Review has correctly ruled that a preponderance of the evidence of record establishes that Ultram and Hydrocodone, prescribed more than two decades after Mr. Blankenship's compensable injury of August 30, 1994, are not reasonably required to treat such an injury. The findings of Drs. Miller and Murphy and Mr. Reeser constitute a clear preponderance of the evidence to support the Board of Review's finding that neither Ultram nor Hydrocodone are reasonably required to treat Mr. Blankenship's compensable lumbar sprain/strain injury. Dr. King, who has prescribed opioid medication to Mr. Blankenship for more than a decade, has not documented substantial and progressive continuing improvement in either his pain or functional status.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 13, 2020**

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING AND WRITING SEPARATELY:**
Justice Margaret L. Workman

4

Justice Workman, dissenting:

I dissent from the majority's decision denying the medications Ultram and Hydrocodone prescribed by Petitioner's treating physician, Samuel King, M.D. Petitioner, a coal miner, receives permanent total disability benefits related to this back injury. Dr. King stated that Petitioner has persistent chronic mechanical pain syndrome from this occupational injury, lumber spondylysis, lumbar myelopathy, and displacement of lumbar region with myelopathy. Dr. King noted that Petitioner will continue to require medications on a lifetime basis due to the permanency of the injury. Dr. King has treated Petitioner for decades and he is in the best position to manage Petitioner's chronic pain.

The majority decision is contrary to the overriding purposes of the Workers Compensation Act—to provide reasonable and necessary medical treatment to employees who are injured on the job. W.Va. Code § 23-4-1. Moreover, West Virginia Code § 23-1-1(b) provides the Act shall "be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers[.]" Respectfully, I dissent.